The PETROMANAGEMENT CORPORATION, a Nevada corporation, Plaintiff–Appellant,

v.

ACME–THOMAS JOINT VENTURE; and J.L. Thomas Engineering, Inc., an Oklahoma corporation, Defendants–Appellees.

No. 86–1012.

United States Court of Appeals, Tenth Circuit.

Jan. 6, 1988.

` Jerry Kirksey of Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl., for plaintiff-appellant.

Clyde A. Muchmore, John J. Griffin, Jr., and Harvey D. Ellis, Jr., of Crowe & Dunlevy, Oklahoma City, Okl., for defendants-appellees.

Before LOGAN, ANDERSON and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

## I

### Facts

In this appeal, we review the district court's dismissal of a diversity suit as barred by res judicata (claim preclusion).[1] Canaden Petroleum Resources, Inc. (Canaden), the predecessor in interest to plaintiff-appellant, The Petromanagement Corporation (Petromanagement), entered into an oil and gas exploration option agreement by which it agreed to purchase from Acme Development, Inc. "up to twenty-eight" oil and gas leases in packages at a per lease price. Acme Drilling & Exploration Company was to drill under a turnkey drilling contract in the form and for prices set out in exhibits to the agreement. All wells drilled were to be operated by J.L. Thomas Engineering, Inc. (J.L. Thomas) under a model form operating agreement set out in another exhibit. Acme–Thomas Joint Venture (Acme–Thomas) agreed to take twenty-five percent of the working interest in each well and could earn another fifteen percent after pay out on the wells. Acme–Thomas, J.L. Thomas, and Canaden all signed the agreement. Subsequently five wells were drilled pursuant to the original option agreement, with separate turnkey and operating contracts signed for each well.

On May 17, 1984, Petromanagement brought its first action (*Petro I*) against Acme–Thomas and J.L. Thomas in the United States District Court for the Western District of Oklahoma. The complaint referenced the option agreement and noted that under it Petromanagement was to receive seventy-five percent participation in a particular well, Pribil # 1, in return for its payment of $591,131.00, seventy-five percent of the turnkey costs. The complaint sought recision and restitution, alleging that Petromanagement had complied with the contract in all respects, but that the defendants had "wholly failed to meet their

contractual obligations, including keeping the well free and clear of all liens." Complaint filed May 17, 1984, CIV–84–1242W (W.D.Okla).

On August 30, 1985, shortly before *Petro I* was scheduled to go to trial, Petromanagement filed the instant action (*Petro II*) against the same defendants in the same court. In this action, Petromanagement referenced the individual contracts, "identical in all material respects" except name and property description, I R.Doc. 1 at 2, on each of the five wells, including Pribil # 1. This complaint, as amended, alleged Petromanagement's compliance with the contracts and defendants' breach as follows:

"Defendants fraudulently induced plaintiff to enter into the contracts and agreements set forth above, in that defendants misrepresented to plaintiff their intentions to operate the subject properties in a reasonable and workmanlike manner, and to abstain from unreasonable acts of self-dealing, and, in that defendants misrepresented to plaintiff the reservoir characteristics of all of the above described properties in an effort to induce plaintiff to enter into those agreements. Specifically, defendants falsely represented to plaintiff that these properties had significantly greater production capabilities than they, in fact, had, when defendants knew such representations to be false. Further, upon discovery of the natural limitations of those properties and reservoirs, defendants continued to falsely advise plaintiff as to said production capabilities of those properties and reservoirs in an effort to encourage and induce plaintiff to expend further sums of money in their development.

Defendants made these misrepresentations with knowledge of their falsity and with the intention that plaintiff rely thereupon. Plaintiff did rely and act thereupon to its detriment and injury."

App.P. 34(a); 10th Cir. R. 34.1.8. The cause is therefore ordered submitted without oral argument.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.

I R.Doc. 6 at 5–6. This time Petromanagement sought actual and punitive damages as well as recision and restitution.

Petromanagement moved to consolidate the two actions on the grounds that the "actions involve common parties as well as common questions of law and fact," I R.Doc. 10, Ex. A at 1, and "grow out of the same nucleus of operative facts." *Id.* at 2.[2] The district court denied the motion on the ground that consolidation would delay the trial. The court accordingly also denied plaintiff's motion to strike *Petro I* from the September 1985 trial docket. Plaintiff then, on September 9, 1985, filed a motion to dismiss *Petro I* without prejudice, which the district court denied at the beginning of the trial docket call on September 11.[3] Rather than go to trial in *Petro I*, Petromanagement stipulated to a dismissal with prejudice, which was filed on September 30, 1985.

A week later, defendants moved to dismiss *Petro II* on the ground of claim preclusion. Applying the federal law of res judicata, the district court found, "Based upon the plaintiff's admissions that these claims involve common parties and arise from a common nucleus of operative facts and upon plaintiff's contentions that these actions 'would be most conveniently tried in one proceeding,' and that 'separate trials of these cases would generate needless expense and needless demands upon the time and resource of all parties,' it is clear under the 'transactional' approach ... that Petromanagement II is barred." I R. Doc. 18 at 5–6 (citations omitted). We now review whether this dismissal was proper.

## II

### *Choice of Law*

■ Petromanagement contends that Oklahoma law should govern the issue of claim preclusion under the doctrine of *Erie*

*Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Our circuit has not resolved the question of whether state or federal claim preclusion law governs in successive diversity actions in federal court. The decisions of the district courts in this circuit have split. *Compare Miller v. Johns–Manville Sales Corp.*, 538 F.Supp. 631, 632 (D.Kan.1982) (applying state res judicata law) *with Fraley v. American Cyanamid Co.*, 570 F.Supp. 497, 499 (D.Colo.1983) (applying federal res judicata law). *Viles v. Prudential Insurance Co.*, 124 F.2d 78, 81–82 (10th Cir.1941), *cert. denied*, 315 U.S. 816, 62 S.Ct. 906, 86 L.Ed. 1214 (1942), applied, without comment, federal res judicata law in circumstances like those facing us here. *Federal Insurance Co. v. Gates Learjet Corp.*, 823 F.2d 383, 386 (10th Cir.1987), expressly left open the general question whether state or federal law should govern the preclusive effect of a federal diversity judgment.

Section 87 of the *Restatement (Second) of Judgments* (1982) (hereinafter *Restatement*) establishes the following general rule: "Federal law determines the effects under the rules of res judicata of a judgment of a federal court." If the prior judgment of the federal court is based on federal law, then the application of this rule seems uncontroversial. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4468, at 617–21 (1981); *Restatement* § 87 comment a. When the prior judgment of the federal court is based on state law, as in a diversity action, however, the application of federal preclusion law becomes more problematic. 18 C. Wright, A. Miller & E. Cooper, *supra* § 4472. Nevertheless, the *Restatement* advocates applying federal preclusion law to determine the effect of a federal

---

**2.** Petromanagement also sought to incorporate some of the *Petro II* theories into its proposed final pretrial order for *Petro I*, I R.Doc. 10, Exh. A of Exh. B at 1 ("Alternatively plaintiff seeks damages for unreasonable delays in drilling operations, and for breach of its 'Operator's Agreement' with defendants."). The court rejected those additions.

**3.** Petromanagement also moved to strike *Petro I* from the September trial docket on the ground that one of plaintiff's attorneys was ill. On September 17, the court denied this motion as well.

judgment, without making an exception for diversity cases:

> "The rules of res judicata are not easily classifiable for purposes of determining whether a federal rule or a state rule should be used to determine a particular effect of a federal judgment. Some aspects of the rules of res judicata reflect primarily procedural policies. Thus, the basic rules of claim and issue preclusion in effect define finality and hence go to the essence of the judicial function. See §§ 17–28. These should be determined by a federal rule."

*Restatement* § 87 comment b, at 317. We think this approach is proper, at least insofar as the res judicata issue is not clearly substantive; and we adopt the "federal law controls" rule in this case.

In so ruling, we agree with several other circuits in applying federal preclusion law in successive diversity actions. *See Harnett v. Billman,* 800 F.2d 1308, 1312–13 (4th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 716–17 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Silcox v. United Trucking Service, Inc.,* 687 F.2d 848, 852 (6th Cir.1982); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503 (11th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed. 2d 970 (1985); *see also Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 42 n. 3 (2d Cir.) (advocating this position in dictum), *cert. denied,* — U.S. —, 107 S.Ct. 1608, 94

L.Ed.2d 794 (1986); *contra Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).[4] This approach is favored by commentators as well. *See, e.g.,* 18 C. Wright, A. Miller & E. Cooper, *supra* § 4472, at 726; *cf.* 1B *Moore's Federal Practice* ¶ 0.410[1] at 362 (1984).

■ While federal law is to govern as a general rule, comment b of *Restatement* § 87 does contemplate federal law incorporating state law when, as with the concept of "privity," the issue is more distinctively substantive. Comment b at 317–18; *see Federal Insurance Co.,* 823 F.2d at 386 (examining Georgia rule of privity to determine collateral estoppel effect of judgment); *Hayles v. Randall Motor Co.,* 455 F.2d 169, 173 (10th Cir.1971) (examining Oklahoma law of privity to determine effect of judgment); *see also Iowa Electric Light and Power Co. v. Mobile Aerial Towers, Inc.,* 723 F.2d 50, 52 (8th Cir.1983) (applying Iowa privity law); 18 C. Wright, A. Miller & E. Cooper, *supra* § 4472, at 733–34 (reasons "may exist for looking to state law on such questions as the scope of the cause of action or the parties bound"). But here the decision whether allegations of separate contract breaches must be tried in one action is not distinctly substantive; this issue is analogous to the federal procedural rule mandating that certain counterclaims be added in a single action. *See* Fed.R.Civ.P. 13(a). *Cf. Answering Service, Inc. v. Egan,* 728 F.2d 1500, 1507

---

4. In several circuits, the issue appears to be unresolved. *First Circuit: Lynch v. Merrell–National Laboratories,* 830 F.2d 1190, 1192 (1st Cir.1987), recognized the issue but declined to resolve it when, on facts of the case, the result would be the same under either state or federal law of preclusion. *Second Circuit:* While both *Gelb,* 798 F.2d at 42 n. 3, and *Travellers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 761 n. 8 (2d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), mention the issue, in neither is its resolution necessary to decide the case; both footnotes, however, cite to and appear to favor strongly the "federal law controls" position of *Restatement* § 87. *Seventh Circuit: Compare Gasbarra v. Park–Ohio Industries,* 655 F.2d 119, 122 (7th Cir.1981) (state law controls in consecutive diversity actions) *with In re Energy Cooperative, Inc.,* 814 F.2d 1226, 1230 (7th

Cir.) (court states blanket rule that federal rule of res judicata controls all federal court judgments; issue before court was res judicata effect of judgment in earlier federal question, not diversity, lawsuit), *cert. denied,* — U.S. —, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). *D.C. Circuit: Compare U.S. Industries, Inc. v. Blake Construction Co.,* 765 F.2d 195, 204 n. 20 (D.C.Cir.1985) (recognizing issue but concluding "[t]here is no need, however, to resolve the question in this case") *with Answering Service, Inc. v. Egan,* 728 F.2d 1500, 1505–06 (D.C.Cir.1984) (in seeking to harmonize prior cases in circuit, court states that *"Erie* requires the use of *all* of a state's substantive law—including those aspects of its res judicata and preclusion law that can be characterized as substantive—whenever the cause of action at issue is state created." *Id.* at 1506 (emphasis in original).).

(D.C.Cir.1984) (Scalia, J., concurring in the judgment) ("I am predisposed to believe that the mandatory joinder of one claim to another is a federal matter under *Erie*, just as the mandatory filing of a counterclaim is a federal matter under the Federal Rules."). Thus, our decision in this case is not inconsistent with *Federal Insurance Co.* or *Hayles*. We affirm the district court's choice of federal law.

### III

*Relevance of the Motion to Consolidate*

■ At first blush, the equities seem to favor strongly Petromanagement, which raised the additional theories of contractual breach before *Petro I* was dismissed after trying unsuccessfully to include them in that litigation, and was then precluded from litigating them separately in the action now on appeal. But this characterization of the procedural history ignores the diachronic equities.

Petromanagement's motion to consolidate came on the eve of trial and more than fifteen months after filing the initial complaint. To grant Petromanagement a consolidation as of right at this late date would effectively circumvent the judge's discretion to deny untimely motions to consolidate or amend. Fed.R.Civ.P. 15(a), 42(a). The court's refusal to consolidate, like a court's denying leave to amend, does not eliminate the possibility of claim preclusion as to the untimely issues excluded. *See, e.g., Nilsen v. City of Moss Point,* 701 F.2d 556, 562–63 (5th Cir.1983); *Poe v. John Deere Co.,* 695 F.2d 1103, 1107 (8th Cir.1982); *Adolph Coors Co. v. Sickler,* 608 F.Supp. 1417, 1431–32 (C.D.Cal.1985); *see also* 18 C. Wright, A. Miller & E. Cooper, *supra* § 4412, at 104–05 ("[F]or the most part such errors should be corrected by appeal in the first proceeding. Denial of leave to amend to assert all parts of a claim partially asserted at the outset of the first action ... should preclude a second action...."); *Restatement* § 25 comment b.

■ Whether the court abused its discretion in denying Petromanagement's motion to consolidate is not raised in this appeal. Nonetheless, in determining whether claim preclusion is justified we must determine whether Petromanagement had sufficient opportunity in the first action to litigate the issues raised for the first time in *Petro II. Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1982). Our inquiry does not merely replicate the abuse of discretion review that we would undertake if the denial of the motion to consolidate had been appealed. Instead, " '[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.' " *Id.* at 481, 102 S.Ct. at 1897 (quoting *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)). *Cf. Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Co.,* 445 F.2d 1177, 1179 (10th Cir.1971) (refusing to bar through claim preclusion an action for labor and materials supplied in the performance of a construction subcontract when the plaintiff "was actually denied the right to litigate any issue in the prior action except Miller Act questions."). Under this standard, Petromanagement has failed to show any deficiency that would undermine the fundamental fairness of the original proceedings.

■ The district court's denial of the motion to consolidate thus does not negate an otherwise valid defense of claim preclusion. By the same token, however, that Petromanagement moved to consolidate does not automatically estop Petromanagement from denying claim preclusion. Not every motion to consolidate raises issues within the scope of one "claim." Plaintiffs may properly move to consolidate issues that, while convenient to litigate together, do not arise out of a single claim that must be litigated in a single action. This accords with the principles underlying the rules of permissive joinder and counterclaims in Fed.R.Civ.P. 13(b) and 18(a).

■ Because motions to consolidate may involve distinct causes of action, parties bringing these motions are not automatically estopped from pursuing separate actions

if the motion is denied.[5]  Moreover, Petromanagement's allegations in a motion to consolidate that the two suits arise from a common nucleus of operative facts and are most conveniently tried together should not have been treated by the district court as binding admissions to justify a res judicata bar of the separate action.  To estop plaintiffs on the basis of such pleading would create perverse incentives for parties seeking to expedite litigation.  Under these circumstances, Petromanagement's attempts to litigate the additional issues in the original proceedings cannot now inform, one way or the other, our decision whether claim preclusion applies.

### IV

### Claims Precluded

■ Under the doctrine of res judicata or claim preclusion, " 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' "  *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979) (quoting *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)).  Determining what constitutes a single "cause of action" has long been a troublesome question.  *See* 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.410[1] at 350 (1984).  In making this determination, we adopt the transactional approach of the *Restatement (Second) of Judgments:*

> "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
> (2) What factual grouping constitutes a 'transaction', and what groupings con

stitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* at § 24.  Several other circuits have accepted this transactional approach.  *See Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Ocean Drilling & Exploration Co. v. Mont Boat Rental Services, Inc.,* 799 F.2d 213, 217 (5th Cir.1986); *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986); *Manego v. Orleans Board of Trade,* 773 F.2d 1, 5 (1st Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *U.S. Industries, Inc. v. Blake Construction Co.,* 765 F.2d 195, 205 (D.C.Cir.1985); *see also Nevada v. United States,* 463 U.S. 110, 130 & n. 12, 103 S.Ct. 2906, 2918 & n. 12, 77 L.Ed.2d 509 (1983) (discussing § 24).  The *Restatement*'s approach apparently has its origin in the Federal Rules of Civil Procedure.  *See* Fed.R. Civ.P. 13(a) (mandating transactional approach for compulsory counterclaims); *Restatement* § 24 comment a, at 196.

Comment b of § 24 describes the basis inquiry:

> "The expression 'transaction, or series of connected transactions,' is not capable of a mathematically precise definition; it invokes a pragmatic standard to be applied with attention to the facts of the cases.  And underlying the standard is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim."

**5.** The denial of some motions to amend or consolidate will, however, be "with prejudice" because they will eliminate the possibility of any subsequent separate litigation of the issues. The equitable concept in Fed.R.Civ.P. 15(a) that leave to amend "shall be freely given when justice so requires" accordingly should be defined in part by whether a claim-preclusive effect will attach to a particular motion.  Both trial and appellate courts should consider this preclusive effect in deciding whether to allow amendment or consolidation under Fed.R.Civ.P. 42(a).

*Id.* at 198–99. Under this approach, a "contract" is generally considered to be a "transaction," so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action. *See Restatement of Judgments* § 62 comment h at 250 (1942) ("All the breaches of contract prior to the commencement of the suit are treated as a single cause of action."); *Prospero Associates v. Burroughs Corp.,* 714 F.2d 1022, 1027–28 (10th Cir.1983). A comment to the Restatement illustrates this general rule:

"A sues B for breach of a contract calling for delivery of certain appliances, alleging as the breach that the appliances did not meet the agreed specifications. After judgment for B, A commences a second action, this time alleging late delivery of the appliances as the breach. The second action is precluded."

*Restatement (Second) of Judgments* § 25 comment b, illustration 2 at 210–11. This standard prohibits the splitting of even factually unrelated contract claims: "[E]ven when there is not a substantial overlap [of the witnesses or proofs in the two actions], the second action may be precluded if it stems from the same transaction or series." *Id.* § 24 comment b, at 199.

The 1942 edition of the *Restatement of Judgments* made an exception to this "contract as transaction" rule by providing that breaches of divisible contracts could be brought separately, § 62 comment i at 253; *see Prospero Associates,* 714 F.2d at 1026 (applying Colorado res judicata law). But we prefer to follow the *Restatement (Second),* which dropped this exception. Alternatively, even if the severable parts of a divisible contract are considered separate transactions, we believe their presence within the same document is sufficient for claim preclusion under the "series of connected transactions" language of § 24. While defining a transaction for purposes of claim preclusion will often prove difficult in varying factual contexts, we see no reason to depart from the bright line standard that all contractual breaches should be raised in a single action.

■ Petromanagement contends, however, that the drilling and operation of the five wells were governed by separate contracts and that the contract-as-transaction rule therefore does not apply. Defendants counter that all wells were drilled and operated pursuant to the original option agreement which incorporated by reference form turnkey and operating contracts. I R.Doc. 10, Exh. A ¶ 4–5 ("drilling will be conducted pursuant to a Turnkey Drilling Contract.... All wells drilled as contemplated herein will be operated pursuant to [a] Model Form Operating Agreement.").

We need not reach this issue in the instant case.[6] Even if separate contracts governed the drilling and operation of the wells, the transactions challenged in the complaints in *Petro I* and *Petro II* are a sufficiently related "series of connected transactions" to prohibit piecemeal litigation. In neither complaint does Petromanagement raise issues, such as failure to drill to a particular depth, that might be peculiar to the individual contract on a specific well. Rather, the *Petro I* complaint appears to reference the initial option agreement, which contemplated all of the drilling. That complaint asserted that defendants "have wholly failed to meet their contractual obligations, including keeping the well free and clear of all liens." This allegation, considering the general "fact pleading" approach of Fed.R.Civ.P. 8, was sufficient to allow presentation of alternative theories for the relief sought.

Although the *Petro II* complaint refers to the five separate well contracts, it attaches only one sample contract, and the breaches alleged, quoted in Part I of this opinion, appear to affect all of the allegedly separate contracts equally. We are satisfied that had such theories been presented at trial in *Petro I* and had judgment been entered for defendants, the judgment could

---

6. As discussed above, this substantive issue of whether the drilling and operating contracts were incorporated by reference in the original option agreement would be governed by Oklahoma law. *See Prospero,* 714 F.2d at 1026 (addressing "question of divisibility or multiple contracts").

have been asserted as a res judicata bar to any similar claims not only as to the Pribil #1 contract but also to any of the others. *Cf. Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (plaintiff estopped from asserting issue it litigated and lost against another defendant); *Parklane Hosiery, Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed. 2d 552 (1979) (defendant may be estopped from litigating issues previously litigated and lost against another plaintiff).

Thus, we need not find that these well contracts constitute a single transaction in all circumstances. It suffices that, in viewing the allegations in both complaints, the contractual breach claims arising from this transactional nexus should have been litigated together. In these circumstances, claim splitting is prohibited. Petromanagement, if convinced that its shift of theory on the eve of trial was not an unfair surprise to defendants, or that its motion to consolidate should have been granted, should not have agreed to dismiss *Petro I* with prejudice, but should have appealed the district court's denial of its motions in *Petro I.*

AFFIRMED.