899 F.2d 1007
 Robert F. MAY, as Deputy Manager of the Western Conference
of Teamsters Pension Trust Fund, Plaintiff-Appellant,
v.
PARKER-ABBOTT TRANSFER AND STORAGE, INC., a Utah
corporation, Defendant-Appellee.
 No. 87-1333.
 United States Court of Appeals,
Tenth Circuit.
 April 4, 1990.
 
 Karen L. Yablonski-Toll of McKendree & Toll, Denver, Colo., for plaintiff-appellant.
 Jeffrey L. Silvestrini (John R. Nelson, also of Cohne, Rappaport & Segal, Salt Lake City, Utah, and Richard S. Strauss of Hochstadt, Straw & Strauss, Denver, Colo., with him on the brief), for defendant-appellee.
 Before LOGAN, BARRETT and BRORBY, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 Appellant Robert F. May, in his capacity as Deputy Manager of the Western Conference of Teamsters Pension Trust Fund (the Fund), sued defendant Parker-Abbott Transfer Storage, Inc. (Parker-Abbott) to compel production of Parker-Abbott's payroll records to enable the Fund to conduct an audit, and to recover any delinquent contributions revealed thereby. On Parker-Abbott's motion for summary judgment, the district court held appellant's entire action barred by the doctrine of res judicata. May v. Parker-Abbott Transfer & Storage, Inc., 663 F.Supp. 22 (D.Colo.1987).FACTS
 
 
 2
 The Fund is a multi-employer benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 et seq. From April 1980 through June 1984 Parker-Abbott was party to a collective bargaining agreement with the International Brotherhood of Teamsters, Local No. 222. Under the agreement, Parker-Abbott was required to make monthly contributions to the Fund for the benefit of its employees. The monthly contribution amounts were to be made based on Parker-Abbott's monthly payroll reports. Also as provided in the agreement, Parker-Abbott was to submit the monthly reports to appellant and to submit to audits of its books by appellant upon demand in order that appellant could ensure the accuracy of the monthly reports and payments.
 
 
 3
 On March 5, 1984, appellant sued Parker-Abbott in federal district court, seeking relief under ERISA, 29 U.S.C. Secs. 1132(g)(2) and 1145. The complaint alleged that contributions due from Parker-Abbott for the months of September and October 1981 and October 1982 were not paid in a timely manner. Pursuant to the collective bargaining agreement, the trust agreement, and the pension certifications, the complaint sought liquidated damages for these delinquent contributions, together with interest, attorneys' fees and costs. R.Vol. I tab 4 ex. A at 3-4. The complaint also alleged that from December 1982 to March 1, 1984, Parker-Abbott had failed to submit reports or pay any contributions and sought an order compelling Parker-Abbott to complete and submit the missing reports and to pay the contributions owed, together with liquidated damages, interest, attorneys' fees and costs. Id. at 4-5. The complaint noted that the
 
 
 4
 amounts owed ... will be based on the employer's reports when submitted. If these reports are inaccurate because of errors and omissions in reporting the number of collective bargaining unit employees covered, they shall not preclude plaintiff from bringing another action for contributions ... and other associated amounts which the Trust Fund subsequently learns are outstanding for December, 1982 to date.
 
 
 5
 Id. at 4.
 
 
 6
 The parties' attorneys began settlement negotiations after service of the complaint. In May 1984, while settlement negotiations were still in process, Parker-Abbott's employees voted to decertify the union, and the collective bargaining agreement expired by its own terms on June 30, 1984. On September 19, 1984, the parties agreed to a "Stipulation for Settlement" (the Stipulation). This agreement provided that Parker-Abbott would pay to the Fund a total of $9,617.21 in twelve monthly installments; "the total principal amount of $9,075.00 together with interest thereon over the term of payments at 11% per annum, said principal amount representing the principal owing in the amount of $6,975.36, liquidated damages in the sum of $2,033.39 and costs in the amount of $66.25." R.Vol. I tab 4 ex. B p 1. The $6,975.36 principal figure is exactly equivalent to the aggregate of the unpaid contributions for the months December 1982 through March 1984, or $435.96 for each month, as calculated and recorded by Parker-Abbott in its monthly reports. R. Vol. I tab 13 p 7; R. Vol. I tab 6 exs. B and D.
 
 
 7
 The settlement agreement was very brief, setting out little more than the schedule of payments and stating that, subject to the terms of the Stipulation, the "action may be dismissed with prejudice." R.Vol. I tab 4 ex. B p 3. On September 27, 1984, the district court entered an order dismissing the action with prejudice subject to Parker-Abbott's compliance with the terms of the payment schedule. R. Vol. I tab 4 ex. C. Thereafter, Parker-Abbott timely fulfilled its obligations under the settlement agreement.
 
 
 8
 In early 1985, the Fund notified Parker-Abbott that it had learned of the decertification and termination of the collective bargaining agreement and asked for the reports for April, May and June 1984. The Fund also indicated its intention to audit Parker-Abbott's payroll records for the period December 1982 through June 1984 and to obtain payment of any amounts revealed to be owing. R. Vol. I tab 4 ex. D. Parker-Abbott refused to allow examination of its records, asserting that the parties' previous settlement covered all claims the Fund might have had against it. R.Vol. I tab 4 ex. E. In response, appellant filed the instant action in April 1986. The complaint seeks to compel an audit of Parker-Abbott's payroll records for the period April 1980 through June 1984, the entire period of Parker-Abbott's reporting and payment obligations to the Fund. R.Vol. I tab 1 at 3. Appellant also seeks liquidated damages, interest, attorneys' fees and costs for any delinquent contributions revealed by the Fund's audit. Id. at 4.
 
 
 9
 In considering defendant's motion for summary judgment on the ground of res judicata, the district court concluded that the key question was "whether plaintiff should have raised, in 1984, the claims asserted in the instant action." 663 F.Supp. at 23. Because the first action was in a state of active litigation when the trust agreements expired on June 30, 1984, the district court concluded that plaintiff was thereafter on notice, or at least on inquiry of notice, of all current claims, and "defendant's liability under the trust agreements for the entire period of April 1980 to June 1984 should have been litigated in the 1984 action because the trust agreement relationship terminated at that time." Id. at 23-24. The court therefore granted Parker-Abbott's summary judgment motion and this appeal followed.
 
 ANALYSIS
 
 10
 In reviewing a summary judgment order, this court must apply the same standard employed by the trial court under Fed.R.Civ.P. 56(c). Lowell Staats Min. Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir.1989). As the facts of this case are not in dispute, this court must determine de novo whether the substantive law of res judicata was correctly applied. Id.; McClain v. Apodaca, 793 F.2d 1031, 1032 (9th Cir.1986) ("We apply a de novo standard of review to questions of res judicata.").
 
 
 11
 Res judicata is " 'a rule of fundamental and substantial justice' " that enforces the public policy that there be an end to litigation. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401-02, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917)). By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action. See Montana v. United States, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979).
 
 
 12
 Under the doctrine of res judicata or claim preclusion, "a final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Stated alternatively, " ' "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." ' " Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir.1988) (quoting Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)). The same rule applies when, as here, a suit is dismissed "with prejudice" by consent decree. See, e.g., Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 324, 327, 75 S.Ct. 865, 866, 868, 99 L.Ed. 1122 (1955).
 
 
 13
 In order to determine what constitutes a single "cause of action" in any given case, this circuit applies the transactional approach of the Restatement (Second) of Judgments Sec. 24 (1982):
 
 
 14
 "(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see Secs. 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
 
 
 15
 (2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."
 
 
 16
 Quoted in Petromanagement, 835 F.2d at 1335. See also Lowell Staats, 878 F.2d at 1274. Under this approach, this circuit also recognizes that "a 'contract' is generally considered to be a 'transaction,' so that all claims of contractual breach not brought in an original action would be subject to bar of claim preclusion, so long as the breaches antedated the original action." Petromanagement, 835 F.2d at 1336 (citing Restatement of Judgments Sec. 62 comment h, at 250 "('All the breaches of a contract prior to the commencement of the suit are treated as a single cause of action.')"). We continued in Petromanagement to provide an illustration of the general rule:
 
 
 17
 "A sues B for breach of a contract calling for delivery of certain appliances, alleging as the breach that the appliances did not meet the agreed specifications. After judgment for B, A commences a second action, this time alleging late delivery of the appliances as the breach. The second action is precluded."
 
 
 18
 835 F.2d at 1336 (quoting Restatement (Second) of Judgments Sec. 25 comment b, illustration 2, at 210-11).
 
 
 19
 Turning to the facts of this case, we conclude that, to the extent that appellant seeks to audit the records of Parker-Abbott from April 1980 through March 1984 the rights sought to be enforced by appellant in his second lawsuit stem from the same transaction out of which the original action arose and thus, could have and should have been brought in the original action. The essential purpose of the one "contract" underlying this litigation (the Trust Agreement) is to provide for proper payment of monthly contributions by Parker-Abbott to the Fund. For the performance of Parker-Abbott's obligations to be complete, those contributions must be both accurately computed and timely paid. The contract provides remedies for late contributions and provides the Fund with audit powers to ensure that contributions are accurate. However, the existence of these two provisions within the contract does not justify two separate trips to the courtroom.
 
 
 20
 In this regard, we cannot distinguish between the two lawsuits in this case and those presented in the Restatement illustration above only the order of the suits is reversed. Here, appellant has brought one suit to force the payment of delinquent monthly contributions (late delivery), and now brings another seeking an audit to ensure the accurate calculation of those contributions (or to ensure that the payments meet the agreed specifications). To allow the second suit to proceed as framed would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources that the doctrine of res judicata is designed to prevent.[1]
 
 
 21
 This court recognizes that consent decrees are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4443, at 384 (1981). Here however, the Stipulation and the consent judgment are absolutely silent as to the settlement's intended res judicata effects. As we noted above, appellant's original complaint sought to establish boundaries for the first suit and to reserve certain of its rights under the Agreement for subsequent litigation. However, those reservations were not expressly carried forward into the contractual settlement with appellee. We are not willing to supply by inference what the parties have failed to expressly provide, especially when that inference would suspend the application of this circuit's principles of res judicata.
 
 
 22
 By our holding, we do not go as far as the district court, which barred appellant's attempt to enforce its audit rights even as to the months April through June 1984; the period following the commencement of the lawsuit and preceding the termination of the collective bargaining agreement. As explained above, this circuit considers separate claims of contractual breach to constitute a single "transaction" only so long as the breaches antedate the original action. Parker-Abbott's failure, if any, to accurately compute the amounts of contributions made after the inception of the lawsuit could not have "antedated" the first lawsuit and thus would not come within the scope of our rule. Accordingly, the district court's bar of appellant's efforts to audit Parker-Abbott's records for this limited time period is reversed. Additionally, appellee's request for fees and costs is denied.
 
 
 23
 The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 LOGAN, Circuit Judge, dissenting:
 
 24
 I agree that this circuit has adopted the transactional approach of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for res judicata purposes. See Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335 (10th Cir.1988). But that does not convince me that the doctrine of res judicata should bar the instant suit.
 
 
 25
 The district court in the case before us apparently viewed May's 1984 suit against Parker-Abbott as one seeking "proper" payments, or at least considered that the cause to require an audit, despite May's attempt in the 1984 complaint to reserve it for later suit, arose out of the same transaction as the suit to require payment. My conclusion that a Trust Fund suit premised on the right to prompt payment presents a separate cause of action from a suit based on the results of an audit--for accurate payment--rests on the judgment that the two kinds of actions arise out of separate transactions, in the sense that the facts giving rise to each are distinct "in time, space, origin, or motivation," see id. at 1335 (quoting Restatement (Second) of Judgments Sec. 24(2) (1942)); and that treating them separately conforms to standard business practices and expectations.
 
 
 26
 What pushes me to view the two actions as separate is recognition that the pension fund is a separate and distinct entity from both Parker-Abbott and the union representing its employees. It has no independent knowledge with which to verify the information the employer supplies in its monthly reports, and thus, as I.A.M. National Pension Fund v. Industrial Gear Mfg. Co., 723 F.2d 944, 948 (D.C.Cir.1983), stated, "[b]efore the Fund can maintain a cause of action alleging inaccurate contributions, it must conduct an audit from which it determines that the monthly reports are inaccurate." To hold that whenever the Fund believes it must sue to prod a lax or recalcitrant employer into submitting required reports or making payments shown as due on reports it has filed, it must conduct an audit of the employer's wage records or forever lose the right to complain of possible omissions or inaccuracies in the contributions owed by that employer, imposes an unfair burden on pension funds while furthering none of the policies behind the doctrine of res judicata. In short, a suit to require the employer to report and pay the amounts shown due on the reports would seem to arise out of different facts, at a different time, and from a different motivation than a suit to compel an audit and to recover any deficiencies the audit reveals.
 
 
 27
 I cannot meaningfully distinguish this case from Industrial Gear, and I would not split the circuits on this issue. Therefore, I respectfully dissent.
 
 
 
 [1]
 We acknowledge the great factual similarity between this case and I.A.M. Nat. Pension Fund v. Industrial Gear Mfg. Co., 723 F.2d 944 (D.C.Cir.1983). There, the D.C. Circuit concluded that the plaintiff's second suit to enforce audit rights was not barred by claim preclusion. However, that court's analysis did not invoke the "transactional" approach of this circuit. Instead, the Industrial Gear panel applied a much stricter definition of "cause of action" that focuses on whether the "primary right asserted in the two cases is the same." Id. at 948. As we have explained, our application of the broader transactional approach yields the opposite conclusion in this case