**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0064n.06

**No. 12-1477**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 15, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LG SCIENCES, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JUDITH PUTZ, Compliance Officer, Food | ) | EASTERN DISTRICT OF MICHIGAN |
| and Drug Administration, sued in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, SUTTON and MCKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. "[E]xplosive muscle gains and skyrocketing strength that surpasses your wildest dreams." "[M]uscle magic." "[B]ecome more cut with every week." LG Sciences promised all of that and a bit more to customers who bought its products. *See Methyl 1-D XL (135 Capsules)*, NutraPlanet.com, http://www.nutraplanet.com/product/legal-gear/methyl-1-d-xl-135-capsules.html (last visited Jan. 9, 2013). But when the Food and Drug Administration claimed that LG's products were improperly labeled and seized them, the company decided to settle rather than flex its muscles in response. The district court concluded that the resulting consent decree barred LG from later suing the FDA official responsible for the seizure. We agree and affirm.

No. 12-1477
*LG Sciences, LLC v. Putz*

I.

In April 2008, the FDA filed a forfeiture complaint against more than 26,000 bottles of LG's products. According to the FDA, LG had improperly labeled the products as dietary supplements. *United States v. 605 Cases, More or Less, of an Article of Food, Each Case Containing 12/135 Capsule Bottles*, No. 2:08-cv-11395-NGE-DAS, ECF # 1, at 3–4 (E.D. Mich. Apr. 2, 2008). In fact, the FDA claimed, the products contained "unapproved food additive[s]" and "new dietary ingredient[s]" that were "not generally recognized as safe" and that might "present a significant or unreasonable risk of illness or injury." *Id*. ¶ 7. That same day, U.S. Marshals seized the products from LG's headquarters in Brighton, Michigan.

LG initially opposed the seizure and filed a counterclaim. *605 Cases*, ECF No. 3 (May 8, 2008). After a year of litigation, LG entered a consent decree with the FDA and promised to destroy all of the products under FDA supervision. *605 Cases*, ECF No. 24 (May 11, 2009). LG also agreed to pay for the FDA monitoring and to pay a penal bond to guarantee the company's compliance. *Id*. ¶¶ 8, 19. The company otherwise denied the allegations in the forfeiture complaint. *Id*. ¶ 5.

Two years later, LG filed a *Bivens* claim against Judith Putz, the FDA compliance officer who signed and verified the forfeiture complaint. R. 1. LG alleged that Putz, conspiring with other FDA officials, had falsified information in the forfeiture complaint. *Id*. As a result, LG claims that no probable cause existed for the FDA to seize its products and that Putz violated its Fourth Amendment rights in the process. The district court granted Putz's motion to dismiss, holding that

the consent decree precluded LG's claim and that, even if it did not, Putz was entitled to qualified immunity. R. 22. This appeal followed.

II.

Claim preclusion forecloses "litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). That means a plaintiff may not bring a claim in a second legal action if: (1) there is "a final decision on the merits of the first action by a court of competent jurisdiction"; (2) "the second action involve[s] the same parties, or their privies, as the first"; (3) "the second action raise[s] an issue actually litigated or which should have been litigated in the first action"; and (4) there is an "identity of claims." *Fieger v. Corrigan*, 602 F.3d 775, 777 n.3 (6th Cir. 2010).

Putz satisfies all four elements of claim preclusion. Element one: "A consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of claim preclusion." *Blakely v. United States*, 276 F.3d 853, 866 (6th Cir. 2002). LG entered the consent decree freely, and the district court approved the decree, creating a final judgment in the forfeiture action.

Element two: The district court concluded that Putz is in privity with the federal government because she is a federal employee. LG does not dispute this conclusion on appeal.

Element three:  This lawsuit involves the same issues that arose in the earlier action.  In the forfeiture action, LG claimed the FDA made "false accusations" about its products that were "unwarranted by the facts."  *605 Cases*, ECF No. 3 at 12–13.  The *Bivens* claim turns on the same allegation:  that Putz verified the forfeiture complaint's "false and misleading statements."  R. 1 ¶ 45.  This new claim does not rely on facts that were hidden or otherwise unavailable at the time of the first action.  *Cf. Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817–19 (6th Cir. 2010).  LG indeed requested and obtained discovery in the first case about many of these issues.  *605 Cases*, ECF No. 18 (discovery plan).  The company had the chance to litigate whether the forfeiture complaint was based on false information in the first action.  It instead opted to deal away its right to litigate by signing a consent decree.  *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) (stating that, after entering a consent decree, "parties waive their right to litigate the issues involved in the case").

Element four:  There is an identity of claims because the two claims "arose out of the same core of operative facts."  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008).  LG does not argue otherwise.

For its part, LG argues that it should not be precluded from challenging Putz's allegations because the company never admitted wrongdoing in the forfeiture action.  That is half-right:  LG never admitted liability, but a consent decree is still a material alteration of the legal relationship between the parties.  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).  LG could have continued to deny the forfeiture complaint's allegations

and litigated its counterclaim. That counterclaim stemmed from the same facts as the forfeiture complaint, requiring LG to litigate it in the forfeiture action. *See* Fed. R. Civ. P. 13(a)(1). Or LG could have preserved a future right to challenge the substance of the forfeiture complaint through language in the consent decree. *See, e.g.*, *Keith v. Aldridge*, 900 F.2d 736, 741–42 (4th Cir. 1990) (noting that the plaintiff "[w]ithout question . . . knew how to preserve a claim for future litigation" when he entered a consent decree); *May v. Parker-Abbott Transfer & Storage, Inc.*, 899 F.2d 1007, 1010–11 (10th Cir. 1990). LG chose none of the above and entered a consent decree that created a "final judgment" for purposes of claim preclusion. *Blakely*, 276 F.3d at 866. It cannot now reverse course and claim that the forfeiture complaint was based on false information. *See* Restatement (Second) of Judgments § 18(2) (1982) ("In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed . . . in the first action.").

Because LG's claims are precluded, we need not decide whether *Bivens* applies in this setting or whether qualified immunity applies to Putz.

III.

For these reasons, we affirm.