Cathy MINIX, Individually, as Mother and Natural Guardian of Gregory Zick, deceased, and as Personal Representative of the Estate of Gregory Zick, Appellant/Cross–Appellee,

v.

Sheriff Frank CANARECCI, Jr., et al., Appellees,

and

Memorial Home Care, Inc., et al., Appellees/Cross–Appellants,

and

Madison Center, Inc., et al., Appellees/Cross–Appellants.

No. 71A04–1009–CT–591.

Court of Appeals of Indiana.

Sept. 8, 2011.

Sean E. Kenyon, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Merrillville, IN, Attorneys for Appellant.

James F. Groves, David E. Ballard, Lee, Groves & Zalas, South Bend, IN, Attorneys for Appellees Sheriff Frank Canarecci, Jr., et al.

Robert J. Palmer, May Oberfell Lorber, Mishawaka, IN, Attorney for Appellees Memorial Home Care, Inc., et al.

Jason A. Scheele, Rothberg Logan & Warsco LLP, Fort Wayne, IN, Attorney for Appellees Madison Center, Inc., et al.

## OPINION

MATHIAS, Judge.

In the first of these consolidated interlocutory appeals, Cathy Minix, ("Minix") appeals from the trial court's grant of summary judgment in favor of St. Joseph County Sheriff Frank Canarecci, Jr. ("the Sheriff") on Minix's wrongful death claim. On cross-appeal, Memorial Health Care, Inc. and several named employees (collectively, "Memorial"), and Madison Center, Inc. and its employee, Christine Lonz (collectively, "Madison") challenge the trial court's denial of their motion for summary judgment on Minix's medical malpractice and wrongful death claims. With respect to the trial court's grant of the Sheriffs motion for summary judgment, we reverse and remand for proceedings consistent with this opinion. With respect to the trial court's denial of Madison and Memorial's motion for summary judgment, we affirm.

### Facts and Procedural History

Following the suicide of her eighteen-year-old son, Gregory Zick ("Zick"), while in custody at the St. Joseph County Jail, Minix brought a 42 U.S.C. § 1983 action in the United States District Court for the Northern District of Indiana against the Sheriff and multiple other defendants, including Memorial and Madison (together, "the Medical Providers"), who contract with the county to provide medical and mental health services to jail inmates. On behalf of Zick's estate, Minix alleged that the defendants violated Zick's Eighth and Fourteenth Amendment rights by displaying deliberate indifference to his risk of suicide. Minix also asserted several Indiana state-law claims, including a medical malpractice claim against the Medical Providers and claims under Indiana's Child Wrongful Death Statute ("the CWDS") against the Medical Providers and the Sheriff in his official capacity.

The federal court granted summary judgment in favor of all defendants on all of the federal claims except for the § 1983 deliberate indifference claim against the Sheriff in his official capacity. Thereafter, all state law claims remained pending. Then, on May 19, 2009, the Sheriff made an offer of judgment pursuant to Federal

Rule of Civil Procedure 68.[1] The language of the offer provided that the Sheriff "offer[ed] to allow judgment against him in his official capacity in the sum of Seventy-five Thousand ($75,000.00) Dollars" without specifying whether it referred to the federal claim, the state claim, or both. Appellees' App. p. 226.

Minix filed a notice of her acceptance of the offer on May 29, 2009. The next day, Minix filed a motion asking the federal court to enter final judgment on the federal official-capacity claim and to relinquish pendent jurisdiction over all pending state-law claims. On June 18, 2009, the federal district court entered an order directing the clerk to enter judgment against the Sheriff "in his official capacity" and then, having resolved all of the federal claims, declined to exercise pendent jurisdiction over Minix's state-law claims and therefore dismissed all of those claims without prejudice. Appellant's App. pp. 231, 228. The Sheriff subsequently paid the full amount of the judgment.

On March 12, 2009, Minix filed a complaint against the Medical Providers in St. Joseph Circuit Court asserting claims for medical malpractice and wrongful death under the CWDS. On July 17, 2009, Minix filed a separate complaint in St. Joseph Superior Court asserting a wrongful death claim against the Sheriff in his official capacity under the CWDS. These actions were subsequently consolidated in the St. Joseph Superior Court.

On December 4, 2009, Memorial filed a motion for summary judgment, in which Madison joined, alleging that any liability on their part was satisfied by the judgment entered against the Sheriff in federal court. After a hearing, the trial court denied the motion on May 11, 2010. On July 2, 2010, the Sheriff filed a motion for summary judgment asserting that the CWDS claim asserted in Minix's state court action was barred by principles of res judicata due to the entry of judgment against him in federal court. The Sheriffs motion was granted on August 20, 2010. In light of the trial court's entry of summary judgment in the Sheriffs favor, the Medical Providers renewed their motion for summary judgment, which the court again denied on August 23, 2010.

On that same date, Minix filed a motion asking the trial court to certify its interlocutory order granting summary judgment in favor of the Sheriff to allow for immediate appeal. On August 26, 2010, the Medical Providers filed a joint motion asking the trial court to certify its interlocutory order denying their motion for summary judgment to allow for immediate appeal. The trial court granted both motions, and this court accepted jurisdiction of both appeals and consolidated them for appellate review.[2]

### Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to

---

1. Federal Rule of Civil Procedure 68 is the federal analogue to Indiana Trial Rule 68. At the time the Sheriff made his offer, Federal Rule 68 provided as follows:

 More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party

 may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

2. The Sheriff's statement of facts is permeated with argument, which is inappropriate in an appellate brief. We remind counsel that the statement of facts should be devoid of argument. *Bowyer v. Ind. Dep't of Natural Res.*, 944 N.E.2d 972, 975 n. 2 (Ind.Ct.App.2011).

judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well settled:

> Our analysis proceeds from the premise that summary judgment is a lethal weapon and that courts must be ever mindful of its aims and targets and beware of overkill in its use.... When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. All doubts as to a factual issue must be resolved in the nonmovant's favor. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant has the burden of demonstrating that the grant of summary judgment was erroneous. Nevertheless, we must carefully assess the trial court's decision to ensure the nonmovant was not improperly denied his day in court.

*Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 613 (Ind.Ct.App.2000) (citations omitted).

 Here, the trial court entered findings and conclusions in support of its grant of the Sheriffs motion for summary judgment and its denial of the Medical Providers' motion for summary judgment. While the entry of specific findings and conclusions offers insight into the reasons for the trial court's decision on summary judgment and facilitates appellate review, such findings and conclusions are not binding on this court. *Ashbaugh v. Horvath*, 859 N.E.2d 1260, 1264–65 (Ind.Ct.App. 2007). We may affirm a trial court's grant of summary judgment based on any theory supported by the designated materials. *Estate of Kinser v. Ind. Ins. Co.*, 950 N.E.2d 23, 26 (Ind.Ct.App.2011).

## I. The Sheriffs Motion for Summary Judgment

 Minix argues that the trial court erred in concluding that her CWDS claim against the Sheriff was barred by the doctrine of res judicata. The principles surrounding res judicata are well-developed in the law.

> The doctrine of res judicata bars the litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. The principle behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute. The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 191 (Ind.Ct.App. 2010) (citations omitted).

In his motion for summary judgment, the Sheriff argued that Minix's wrongful death claim against him in his official capacity is barred by the doctrine of res judicata because Minix raised an identical state-law, official-capacity claim in the federal action and the federal court entered judgment in her favor on that claim. According to the Sheriff, because his offer of judgment simply stated that he offered to allow judgment against him "in his official capacity" and Minix's acceptance mirrored that language, the trial court's subsequent entry of judgment against the Sheriff must

necessarily encompass all official-capacity claims brought against him in the federal action, including the state-law claim under the CWDS. The trial court agreed, and in granting the Sheriff's motion for summary judgment, made the following relevant findings and conclusions:

2. All of the claims presently pending in this case against [the Sheriff] brought by plaintiffs, Cathy Minix, Individually, as Mother and Natural Guardian of Gregory Zick, deceased, and as Personal Representative of the Estate of Gregory Zick, have been brought against the Sheriff in his official capacity.

3. [Minix's] claims in this case are identical to the state law claims that were asserted against [the Sheriff], in his official capacity, in [Minix's] federal case in the United States District Court for the Northern District of Indiana....

4. The Offer of Judgment made by the [Sheriff], in his official capacity in the federal case encompassed the same state law claims that are now before this court.

5. The parties, who are plaintiffs in this case, as plaintiffs in the aforementioned federal case accepted the Offer of Judgment by [the Sheriff], in his official capacity, in their Notice of Acceptance of Offer of Judgment.

6. All of the claims being asserted in this case by [Minix] against [the Sheriff] in his official capacity ... are barred by the doctrine of res judicata.

Appellant's App. pp. 17–18.

Minix does not dispute that she raised an identical state-law, official-capacity claim against the Sheriff in the federal suit, but she argues that her claim is not barred because, regardless of the terms of the Sheriff's offer of judgment or the acceptance thereof, the judgment rendered by the federal court did not dispose of her state-law claims on their merits but rather, dismissed those claims without prejudice. Minix contends that because the Sheriff did not appeal or otherwise contest the judgment entered in the federal court, he cannot now challenge that judgment through a motion for summary judgment in the state court.

■ As an initial matter, we note that an offer and acceptance of judgment, by themselves, have no preclusive effect; rather, any preclusive effect springs from the judgment entered as a result of that agreement. *See* 18A Charles Alan Wright, et al., Federal Practice and Procedure: Jurisdiction § 4443 (2d ed. 2011) ("To support preclusion at all, there must be a judgment in some form; a settlement agreement by itself is effective only as a contract."). Thus, the Sheriff's reliance on the language of the offer and acceptance of judgment is misplaced.

Turning now to the preclusive effects of the federal district court's judgment, this court has noted that federal courts are split as to whether and to what extent consent judgments such as those arising under Rule 68 operate as a bar to subsequent litigation. *Hanover Logansport, Inc. v. Robert C. Anderson, Inc.,* 512 N.E.2d 465, 469 (Ind.Ct.App.1987).[3] In *Hanover,* this court noted that

[a] consent judgment has a dual aspect. It represents an agreement between the parties settling the underlying dispute and providing for the entry of judgment in a pending or contemplated action. It also represents the entry of such a judgment by a court—with all that this

---

**3.** The *Hanover* court looked to federal decisions for guidance in interpreting the preclusive effect of a consent judgment rendered in an Indiana state court pursuant to Indiana Trial Rule 68. 512 N.E.2d at 469. Accordingly, its ultimate holding is not binding here.

means in the way of committing the force of society to implement the judgment of its courts.

*Id.* at 470 (citations omitted).

Because of this dual aspect, some courts focus on the fact that a consent judgment is a final judgment by a court and conclude that, as such, a consent judgment possesses the same force with regard to principles of res judicata as a judgment entered after a trial. *Id.; see, e.g., Interdynamics Inc. v. Firma Wolf,* 653 F.2d 93, 96–97 (3d Cir.1981) ("[A] consent decree, although negotiated by the parties, is a judicial act.... Such a decree possesses the same force with regard to res judicata and collateral estoppel as a judgment entered after a trial on the merits."). Other courts focus on the contractual nature of consent judgments and apply principles of contract interpretation in determining their preclusive effect. *See, e.g., May v. Parker–Abbott Transfer and Storage, Inc.,* 899 F.2d 1007, 1010 (10th Cir.1990) (reasoning that "consent decrees are of a contractual nature and, as such, their terms may alter the preclusive effects of a judgment"); *Sec. & Exchange Comm'n v. Levine,* 881 F.2d 1165, 1179 (2d Cir.1989) (reasoning that consent judgments should be construed basically as contracts and "interpreted in a way that gives effect to what the parties have agreed to, as reflected in the judgment itself or in documents incorporated in it by reference"). Under either approach, it is the judgment that controls, not the offer of judgment.

■ We need not decide which approach to take here because whether we interpret the consent judgment in the same manner as any other judgment or according to principles of contract, we reach the same conclusion. Because we conclude that the federal district court's judgment plainly indicated that it was dismissing without prejudice *all* the state-law claims raised in Minix's complaint, Minix's state-law CWDS claim against the Sheriff in his official capacity is not barred by the doctrine of res judicata.

In its June 18 order, the federal district court indicated that because an offer and acceptance of judgment had been filed with the court, the clerk was required to enter judgment against the Sheriff on the singular "official capacity *claim* against him." Appellant's App. p. 231 (emphasis added). The court went on to direct the clerk to enter judgment against the Sheriff "in his official capacity," without specifying whether it was referring to the federal or the state claim. *Id.* However, the order also contains the following language: "As to *all state law claims asserted against* [*the Sheriff* and other defendants], the court GRANTS the motion to decline pendent jurisdiction ... and orders those claims DISMISSED without prejudice." *Id.* (emphasis added). In accordance with the court's order, the consent judgment entered against the Sheriff by the federal clerk as a result of the federal court's order contains the following language: "[J]udgment is hereby entered ... against [the Sheriff] [i]n his official capacity in the sum of $75,000; *All state law claims asserted against* [*the Sheriff* and other defendants] are DISMISSED WITHOUT PREJUDICE[.]" *Id.* at 228 (emphasis added).

It is clear from the language of the consent judgment that the judgment did not encompass Minix's state-law CWDS claim against the Sheriff in his official capacity. Although the federal district court entered judgment against the Sheriff in his official capacity, the judgment did not specify that it included *all* of the official capacity claims against the Sheriff. The judgment did, however, expressly provide that *all* state-law claims against the Sheriff were dismissed without prejudice;

that is, the federal court specifically indicated that it was *not* entering judgment against the Sheriff on *any* of Minix's state-law claims.

Thus, if we apply ordinary preclusion principles to the consent judgment, it is clear that Minix's current CWDS claim against the Sheriff is not barred. Because the federal district court expressly declined to exercise pendent jurisdiction over *all* of Minix's state-law claims, including her CWDS claim against the Sheriff in his official capacity, Minix is not barred by the doctrine of res judicata from reasserting those claims in her state court action. *See* Mark Jay Altschuler, *Res Judicata Implications of Pendent Jurisdiction*, 66 Cornell L.Rev. 608, 614 (1981) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1134 (7th Cir.1979) (holding that a federal district court, "having declined jurisdiction over the state claims, was without power to extinguish them")).

■■■ We reach the same conclusion by applying principles of contractual interpretation. Under contract principles, consent judgments must be interpreted in a way that gives effect to the parties' intention, as reflected within the four corners of the judgment itself. *Levine*, 881 F.2d at 1179 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256); *see also Keck v. Walker*, 922 N.E.2d 94, 101 (Ind.Ct.App.2010) ("Indiana follows the 'four corners rule,' which states that extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction."); *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind.Ct.App. 2008) (when the terms of a contract are clear and unambiguous, we will not con-

strue the contract or look to extrinsic evidence, but will merely apply the contractual provisions), *trans. denied.* We may not "expand or contract the agreement of the parties as set forth in the consent decree.'" *Levine*, 881 F.2d at 1179 (quoting *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985)). "The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases, or even paragraphs read alone." *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 98 (Ind.Ct. App.2007).

Here, the language of the consent judgment as a whole clearly and unambiguously reflects the parties' intention that Minix not be barred from reasserting her state-law claims in state court. Although judgment was entered against the Sheriff in his official capacity, the judgment did not specify that it encompassed *all* of the official-capacity claims asserted against the Sheriff, and the judgment went on to specifically provide that *all* state-law claims against the Sheriff were dismissed without prejudice. Because the parties agreed that all of Minix's state-law claims, including her CWDS claim against the Sheriff in his official capacity, would be dismissed without prejudice, they agreed that Minix would not be barred from reasserting her state-law claims in an action in state court. *See Zaremba v. Nevarez*, 898 N.E.2d 459, 463 (Ind.Ct.App.2008) (claims dismissed without prejudice are not barred by the doctrine of res judicata); *see also* Black's Law Dictionary (9th ed.2009) (defining a "dismissal without prejudice" as "[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period"). Because the language of the consent judgment is clear and unambiguous, we will not look beyond the four corners of the judgment itself to de-

termine its preclusive effect.[4]

The Sheriff devotes the majority of his brief to arguing that the terms of his offer and Minix's acceptance encompassed Minix's official-capacity CWDS claim against the Sheriff.[5] But this is essentially an argument that the federal district court incorrectly interpreted the offer and acceptance when it entered the consent judgment. If the Sheriff believed that the consent judgment was in error, he should have sought relief in the federal courts. The Sheriff's attempts to undermine the consent judgment in state court amount to an impermissible collateral attack. *Ind. Dep't of Envtl. Mgmt. v. Conard,* 614 N.E.2d 916, 922 (Ind.1993) ("A collateral attack on a judgment is an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the motion."); *Dawson v. Estate of Ott,* 796 N.E.2d 1190, 1196 (Ind.Ct.App.2003) (noting that an action in a state court that attempts to undermine a federal court decision is an impermissible collateral attack).

For all of these reasons, we conclude that Minix's CWDS claim against the Sheriff in his official capacity is not barred by the doctrine of res judicata. Therefore,

the trial court erred in granting summary judgment for the Sheriff on that basis.

Because the trial court concluded that Minix's claim was barred by the doctrine of res judicata, it did not address the other arguments made by the Sheriff in support of his motion for summary judgment. On appeal, the Sheriff reasserts one of his arguments not addressed by the trial court; specifically, he argues that because Minix has already recovered damages in the § 1983 action in federal court, any recovery on the claim she has asserted against him in the state court would amount to a double recovery.

It is an elementary principle of tort law that a plaintiff is entitled to only one recovery for a wrong. *Myers v. State,* 848 N.E.2d 1108, 1110 (Ind.Ct.App.2006). In support of his argument that any recovery on Minix's state-law wrongful death claim against him would amount to a prohibited double recovery, the Sheriff cites several cases in which it was held that a single plaintiff was prohibited from recovering damages in both a § 1983 action and a state law tort action based on the same facts because those claims asserted essentially the same wrong. *See, e.g., Clappier v. Flynn,* 605 F.2d 519, 531 (10th Cir.1979) (pretrial detainee who sued sheriff after

4. Notably, the Sheriff never fully addresses the language of the consent judgment in his brief. Indeed, he only quotes the portion of the federal court's order directing the clerk to enter judgment against the Sheriff in his official capacity. Sheriff's Br. at 13. He ignores the portions of the order and judgment dismissing "[a]ll state law claims asserted against [the Sheriff]" without prejudice. Appellant's App. pp. 228, 231.

5. The Sheriff also relies on *Fafel v. DiPaola,* 399 F.3d 403, 414 (1st Cir.2005), for the proposition that a Rule 68 judgment incorporates the terms of the underlying offer. We are at a loss as to how *Fafel,* which dealt with a feder-

al court's jurisdiction to enforce a consent judgment, supports a conclusion that this court should look beyond the terms of the consent judgment in order to determine its preclusive effect. And in any event, the consent judgment in this case did, in fact, incorporate the terms of the offer by providing that judgment was entered against the Sheriff in his official capacity, but the judgment also provided that all of Minix's state law claims against the Sheriff were dismissed without prejudice. *Fafel* does not remotely support the conclusion that we should ignore this additional language in determining the judgment's preclusive effect.

being assaulted by other inmates could not recover on both state law negligence claims and § 1983 claims because both claims arose from the same facts and sought identical relief in the form of compensatory damages); *Zarcone v. Perry*, 78 A.D.2d 70, 434 N.Y.S.2d 437, 443–44 (1980) (plaintiff who had already recovered damages in § 1983 action was precluded from bringing an action to recover damages for state law torts based on the same conduct of defendants), *aff'd*, 55 N.Y.2d 782, 447 N.Y.S.2d 248, 431 N.E.2d 974 (1981).

 These cases are easily distinguishable from the case at hand. Here, the § 1983 claim and the state-law tort claim are being asserted by different plaintiffs and seek redress for different injuries. The § 1983 deliberate indifference claim sought recovery for Zick's injuries resulting from the Sheriff's violations of Zick's constitutional rights. Thus, the plaintiff in the § 1983 action was Zick's estate; Minix asserted the § 1983 claim in the federal court action seeking damages for Zick's injuries in her capacity as personal representative of Zick's estate and not on her own behalf.[6] Tr. p. 19.

 On the other hand, Minix's state court action seeks recovery under the CWDS, which allows a parent to pursue a claim for damages against a person whose wrongful act or omission causes the death of a child.[7] *See* Ind.Code § 34–23–2–1(c) (2011). The statute allows a parent to recover damages for the loss of the child's services, love, and companionship, as well as expenses such as hospital bills and funeral costs resulting from the child's death. I.C. § 34–23–2–1(f). Minix's state court complaint against the Sheriff indicated that she was seeking recovery for her "loss of [Zick's] love, affection, companionship, care, protection, and guidance" and for her "sorrow, stress, shock, and mental suffering" stemming from Zick's death. Appellee's App. p. 42. Thus, the plaintiff in the wrongful death action is Minix personally, and she is seeking recovery for her own injuries. *See Ellenwine v. Fairley*, 846 N.E.2d 657, 662 (Ind.2006) (holding that a claim brought by a child's parents under the CWDS "allows for the recovery of damages that inure to the benefit of the parents"). Because the § 1983 claim and the CWDS claim at issue are being asserted by different plaintiffs and seek redress for different injuries, an award of damages in both actions will not necessarily result in a double recovery.[8] The Sheriff is there-

---

**6.** We express no opinion on the question of whether Zick's § 1983 claim for violations of his constitutional rights survived his death, which is apparently not entirely settled. *See Robertson v. Wegmann*, 436 U.S. 584, 589–90, 594, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (holding that the survivability of a § 1983 claim instituted by a plaintiff prior to his death is to be determined based on the law of the forum state unless state law is inconsistent with federal policy, but specifically indicating that it was expressing no view regarding whether abatement of § 1983 claims based on state law would be allowed where the alleged deprivation of constitutional rights caused death); Ind.Code §§ 34–9–3–1, –4 (2011) (providing that personal injury claims do not survive death unless the death is occasioned by causes other than those alleged as the basis for the personal injury claim); *Tracy ex rel. Estate of Tracy v. Bittles*, 820 F.Supp. 396, 404 (N.D.Ind.1993) (declining to apply Indiana's survivorship statute and allowing estate to pursue decedent's § 1983 claim for personal injuries where decedent died as a result of the alleged violations forming the basis of his § 1983 claim).

**7.** The statute defines a child as "an unmarried individual without dependents who is: (1) less than twenty (20) years of age; or (2) less than twenty-three (23) years of age and is enrolled in a postsecondary educational program." Ind.Code § 34–23–2–1(b) (2011).

**8.** We say that recovery under both § 1983 and the CWDS would not "necessarily" result in a double recovery because, in certain cases,

fore not entitled to summary judgment on this ground.

For all of these reasons, we conclude that the trial court erred in granting summary judgment in the Sheriffs favor. Accordingly, we reverse the trial court's order granting summary judgment in the Sheriff's favor and remand for proceedings consistent with this opinion.

## II. The Medical Providers' Motion for Summary Judgment

On cross-appeal, the Medical Providers argue that the trial court erred in denying their motion for summary judgment. Specifically, they argue that in light of the Sheriffs satisfaction of the judgment rendered in the federal district court, Minix has already been fully compensated for the injuries alleged against them in the St. Joseph Superior Court and that Minix is therefore barred from seeking any additional recovery. The trial court disagreed, and in support of its denial of the Medical Providers' motion, the trial court made the following relevant findings and conclusions:

As to the question of whether plaintiffs' claims for relief pending in this court have already been satisfied by [the Sheriffs] offer of judgment in the federal court case on May 19, 2009, which was accepted by the plaintiffs on May 29, 2009 and upon which the federal court entered judgment on June 18, 2009, there is no genuine issue as to any material fact, however, the court concludes that the plaintiffs' claims have not necessarily been satisfied and plaintiff can recover additional compensatory damages against [the Medical Providers] and, therefore, as to this issue, the Memorial defendants are not entitled to a judgment as a matter of law.

Appellees' App. pp. 13–14.

 As an initial matter, we note that in her state court complaint against the Medical Providers, Minix asserted a claim for medical malpractice and a claim under the CWDS. As we explained above, the federal district court only entered judgment on the § 1983 deliberate indifference claim against the Sheriff, which was brought by Minix in her capacity as personal representative of Zick's estate and sought recovery for Zick's injuries. The CWDS claim against the Medical Providers, like the CWDS claim against the Sheriff, was brought by Minix personally and seeks recovery for Minix's injuries resulting from the loss of her son. For the same reasons we concluded that recovery

---

there may be some overlap between the damages awarded under both statutes. Damages in § 1983 cases, like in ordinary negligence cases, are designed to provide a plaintiff (in this case, Zick's estate) with compensation for his injuries caused by the defendant's breach of duty, including out-of-pocket expenses. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). As we noted above, the CWDS provides a mechanism for a parent to recover for the loss of the child's services and love and companionship. I.C. § 34–23–2–1(f). But the CWDS also allows a parent to recover for hospital and health care expenses arising as a result of the wrongful act causing the child's death. *Id.* As our supreme court noted in *Ellenwine*, "[t]he only measure of damages which is consistent between those recoverable in a negligence action and those recoverable in a wrongful death action are those for the hospital and health care expenses which arise as a result of the wrongful act which caused the death." 846 N.E.2d at 662. But in her complaint, Minix asserts that she is seeking damages only for her "loss of [Zick's] love, affection, companionship, care, protection, and guidance" and for her "sorrow, stress, shock, and mental suffering" stemming from Zick's death, and she makes no mention of any hospital expenses. Appellee's App. p. 42. Thus, if Minix prevails in her CWDS claim against the Sheriff, it does not appear that there would be any overlap between the damages received on that claim and the § 1983 claim.

on Minix's CWDS claim against the Sheriff would not result in a double recovery, we also conclude that any damages awarded on the CWDS claim against the Medical Providers would not result in a double recovery.

██ The medical malpractice claim, however, was brought by Minix in her capacity as personal representative of Zick's estate and seeks recovery for Zick's injuries allegedly resulting from the Medical Providers' professional negligence.[9] Tr. p. 17; *see also Ellenwine*, 846 N.E.2d at 662 (noting that a medical malpractice claim is a negligence claim by or on behalf of the injured party). And Minix claims that the Medical Providers' alleged malpractice and the Sheriff's violation of Zick's civil rights combined to result in a single injury—Zick's death. Thus, Minix asserts that the Sheriff and the Medical Providers are joint tortfeasors. *See Palmer v. Comprehensive Neurologic Servs.*, 864 N.E.2d 1093, 1101 (Ind.Ct.App.2007) ("Joint tortfeasors are those whose actions unite to cause a single injury."), *trans. denied.*

██ As we noted above, it is axiomatic that a plaintiff is only entitled to one full recovery for an injury. *Consol. Rail Corp. v. Travelers Ins. Cos.*, 466 N.E.2d 709, 712 (Ind.1984). A logical outgrowth of the prohibition against double recovery is the one satisfaction rule, which provides that where a plaintiff asserts that the wrongful acts of two or more joint tortfeasors cause a single injury, satisfaction of the loss by one tortfeasor releases all other joint tortfeasors. *See id.; Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 141 (Ind.2000) (noting that an "injured party is entitled to only one satisfaction for a single

injury and the payment by one joint tortfeasor inures to the benefit of all").

The Restatement (Third) of Torts: Apportionment of Liability § 25(a) (2000) summarizes the one satisfaction rule as follows:

> *When a judgment includes a determination of the entirety of recoverable damages suffered by the plaintiff* for an indivisible injury and provides for their recovery by the plaintiff against one or more of the defendants, payment of the full amount of recoverable damages constitutes a satisfaction of the plaintiff's rights against all tortfeasors legally responsible for the plaintiff's indivisible injury.

(emphasis added). Comment c to that section further provides that "[w]hen a plaintiff obtains a judgment for all recoverable damages, discharge of the judgment bars any further action against other potential tortfeasors.... *By obtaining the full amount of recoverable damages*, the plaintiff's legal rights are satisfied, and the plaintiff may not pursue any others for further recovery." (emphases added). *See also* Restatement (Second) of Judgments § 50 cmt. d (1982) ("[W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party has no enforcible [sic] claim against any other obligor who is responsible for the same loss." (emphasis added)).

Here, although the federal court rendered judgment against the Sheriff for the same injuries asserted against the Medical Providers in the medical malpractice claim, that judgment did not include a determination of the entirety of recoverable damages

---

9. Because neither party raised the issue before the trial court or on appeal, we do not address whether Zick's medical malpractice claims survived his death. *See* I.C. §§ 34–9–3–1, –4; *Ellenwine*, 846 N.E.2d at 664–65 (if a death is caused by medical malpractice, the malpractice claim terminates at the patient's death).

suffered by Zick. Rather, the judgment merely reflects an amount agreed to by the parties, without any determination by the court or a jury that the amount fully compensated Zick's estate for the injuries Zick suffered. Indeed, under the terms of Federal Rule of Civil Procedure 68, once Minix accepted the Sheriff's offer of judgment, the federal district court was *required* to enter judgment in that amount, regardless of whether the amount was sufficient to fully compensate for the injury alleged. Fed.R.Civ.P. 68 (providing that once the notice of offer and acceptance are filed, "[t]he clerk must then enter judgment"). In the absence of determination of the full measure of Zick's recoverable damages, the one satisfaction rule is inapplicable. Consequently, the Sheriff's payment of the federal court judgment does not bar Minix from pursuing a claim for additional compensation from the Medical Providers.

■ We also note that the Medical Providers raised a similar claim before the Seventh Circuit in Minix's appeal from the federal district court's order granting summary judgment in favor of the Medical Providers on Minix's federal claims. *Minix v. Canarecci* 597 F.3d 824, 830 (7th Cir.2010). Specifically, they argued that Minix's appeal was moot because her acceptance of the Sheriff's $75,000 offer of judgment fully compensated for the injuries alleged and left Minix with no viable claim for compensatory damages against them. *Id.* The court disagreed, reasoning in part that it was "doubtful" that the Sheriff's offer fully compensated for the

injuries alleged in light of verdicts rendered in other jail suicide cases. *Id.* (citing *Woodward v. Corr. Med. Servs.,* 368 F.3d 917, 920 (7th Cir.2004) (upholding $250,000 in compensatory damages on § 1983 deliberate indifference claim arising out of jail suicide)). Thus, it appears likely that the Sheriff's $75,000 payment was in fact insufficient to fully compensate the estate for Zick's injuries, and Minix is not barred from pursuing additional damages from the Medical Providers on behalf of Zick's estate.[10]

For all of these reasons, we conclude that the Medical Providers are not entitled to summary judgment on the grounds asserted. We therefore affirm the trial court's denial of the Medical Providers' motion for summary judgment.

### Conclusion

With respect to the trial court's grant of the Sheriff's motion for summary judgment, we reverse and remand for proceedings consistent with this opinion. With respect to the trial court's denial of the Medical Providers' motion for summary judgment, we affirm

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

KIRSCH, J., and VAIDIK, J., concur.

---

10. Madison also argues that if Minix is not precluded from seeking additional compensatory damages for Zick's injuries, Madison is entitled to a set-off against any future judgment rendered against them in the amount already paid by the Sheriff. This argument was not raised before the trial court, and it is therefore waived. *See Babinchak v. Town of*

*Chesterton,* 598 N.E.2d 1099, 1103 (1992) (arguments raised for the first time on appeal are waived). Waiver notwithstanding, and assuming that Madison is correct, this claim is not appropriately addressed through a motion for summary judgment. Because no judgment has been rendered against Madison, its claim for set-off is premature.