## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2016, 6:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Michael P. Quirk | Danyel Struble |
| Muncie, Indiana | Muncie, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.S., <br> *Appellant-Defendant,* <br><br> v. <br><br> D.S., <br> *Appellee-Plaintiff.* | August 23, 2016 <br><br> Court of Appeals Case No. 18A04-1602-AD-317 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Kimberly S. Dowling, Judge <br><br> Trial Court Cause No. 18C02-1511-AD-2 |

**Altice, Judge.**

**Case Summary**

[1] K.S. (Birth Mother) appeals from the trial court's order granting the petition of D.S. (Adoptive Mother) to adopt J.S. (Child), which included findings that Birth Mother's consent to the adoption was both irrevocably implied due to her failure to appear at the hearing to contest the adoption and not required due to her abandonment of Child. On appeal, Birth Mother argues that the trial court erred in denying her request for a continuance. Adoptive Mother cross-appeals and requests appellate attorney fees pursuant to Appellate Rule 66(E).

[2] We affirm and remand with instructions.

## Facts & Procedural History

[3] Birth Mother and C.S. (Father) were married in 2009, and Birth Mother gave birth to Child in 2011. Birth Mother and Father's divorce was finalized in November 2014, at which time Father was awarded sole legal and physical custody of Child. When custody was transferred from Birth Mother to Father upon the entry of the custody order, Child's weight was below what it should have been for his age and he was not verbal. Father and Adoptive Mother lived together at that time, and they married approximately one month later. Adoptive Mother took an active role in caring for Child and getting him the services he needed, including counseling, speech therapy, medical care, and preschool. While in the care of Father and Adoptive Mother, Child has made significant progress in his speech, weight, and social skills. Additionally, Child has formed a close bond with Adoptive Mother's biological daughter.

[4]  After Father took custody of Child, Birth Mother exercised visitation for a few months before she stopped showing up. Despite being given multiple opportunities to visit with Child, Birth Mother has not seen him since March 2015. Birth Mother has also failed to pay child support. In September 2015, the dissolution court suspended Birth Mother's visitation and ordered her to complete drug treatment and submit to a hair follicle test before visitation would be reinstated. Birth Mother has failed to complete these requirements.

[5]  On November 18, 2015, Adoptive Mother filed a petition to adopt Child, to which she attached Father's written consent. In the petition, Adoptive Mother alleged that Birth Mother had abandoned Child for a period of at least six months prior to the filing of the petition and that Birth Mother had not consistently paid child support. Birth Mother filed a response and objection to the petition on November 25, 2015, and the trial court scheduled a hearing for January 8, 2016.

[6]  Birth Mother filed a request for a continuance on December 17, 2015. In the motion, Birth Mother's counsel represented that Birth Mother had entered an inpatient drug treatment facility in California on December 1, 2015, and that she would be there for at least ninety days. In response to this motion, the trial court converted the hearing scheduled for January 8, 2016 to a status hearing and indicated that the motion for continuance would be addressed at that time. The court instructed counsel to bring proof of Birth Mother's enrollment in treatment to the status hearing. On January 5, Birth Mother's counsel filed a Notice to the Court stating that Birth Mother had been in inpatient drug

treatment since December 1, 2015. Attached to the notice was a letter ("the Nationwide Recovery Letter") dated November 29, 2015, purporting to be from the owner of "Nationwide Recovery" in California, stating that Birth Mother "w[ould] be attending" drug treatment beginning December 1, 2015, and that treatment would last between forty-five and ninety days. *Appellant's Appendix* at 29.

[7] Birth Mother did not appear at the January 8 status hearing, but counsel appeared on her behalf. At the hearing, Birth Mother's counsel indicated that he had lost contact with Birth Mother. Counsel stated that he had spoken to her during a conference call on another matter shortly before Christmas, and she claimed at that time to be in treatment but she believed she would be getting out early. Counsel had not heard from Birth Mother since, and he did not know her whereabouts at the time of the hearing or whether she had left treatment early. The trial court agreed to reschedule the adoption hearing, and Birth Mother's counsel requested the hearing be set "sooner than later[.]" *Transcript* at 12. The trial court suggested January 13, 2016, and Birth Mother's counsel said that date was "fine." *Id.*

[8] Birth Mother failed to appear again at the January 13 hearing, and her counsel requested another continuance because he had been unable to locate her and he wanted to confirm whether she was in treatment. Birth Mother's counsel stated that he had called the telephone number listed on the Nationwide Recovery Letter and got what he believed to be a cell phone message indicating that the voicemail inbox was full. Birth Mother's counsel tried another telephone

number for Nationwide Recovery that he looked up online, but all he got was a busy signal. Adoptive Mother's counsel objected to the motion for continuance and voiced concerns about the authenticity of the Nationwide Recovery Letter. Specifically, Adoptive Mother's counsel stated that the address listed on the letter did not match the address on the facility's website, and she noted that part of the letter was whited out. Adoptive Mother's counsel noted further that Nationwide Recovery Letter did not confirm that Birth Mother had ever actually entered treatment. Instead, it stated that Birth Mother would be entering treatment on December 1, 2015.

[9] The trial court denied the motion for continuance and the matter proceeded to a hearing. At the conclusion of the evidence, the trial court ruled that Birth Mother's consent to the adoption was implied pursuant to Ind. Code § 31-19-9-18 due to her failure to appear to contest the petition. The trial court concluded further that Birth Mother's consent was not required because she had abandoned Child for at least six months prior to the filing of the petition. *See* I.C. § 31-19-9-8. The trial court found that the adoption was in Child's best interest and therefore granted the petition. Birth Mother now appeals.

## Mother's Arguments

[10] On appeal, Birth Mother frames the issue as whether the trial court erred in denying her motion for a continuance. However, Birth Mother has failed to cite the applicable standard of review or any authority whatsoever in support of her argument in this regard. "A party waives any issue for which it fails to

develop a cogent argument or support with adequate citation to authority." *Zoller v. Zoller*, 858 N.E.2d 124, 127 (Ind. Ct. App. 2006) (quoting *Steiner v. Bank One Ind., N.A.*, 805 N.E.2d 421, 429 n.6 (Ind. Ct. App. 2004)). Accordingly, Birth Mother's argument that the trial court erred in denying her motion for continuance is waived.

[11]   Waiver notwithstanding, we note that Birth Mother was well aware of the adoption proceedings, as counsel had filed an appearance and objection on her behalf. Nevertheless, Birth Mother failed to appear for two scheduled hearings or maintain contact with her attorney. By the time of the adoption hearing, Birth Mother's attorney did not know where Birth Mother was or how to reach her. When he attempted to contact her using the contact information listed in the Nationwide Recovery Letter and additional information he had researched online, he could not reach anyone. Indeed, at the January 8 status hearing, Birth Mother's counsel stated that he had been informed that Birth Mother was "on the run."[1] *Transcript* at 6. Given Birth Mother's undisputed knowledge of the adoption case and her utter failure to keep the court or her attorney apprised of her whereabouts, we cannot conclude that Birth Mother has established good cause for a continuance.[2] *See F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct.

---

[1] We note that Birth Mother was represented by the same counsel at trial and on appeal.

[2] Birth Mother also seems to suggest that she should have been sent notice of the adoption hearing at the address listed in the Nationwide Recovery Letter. Again, Birth Mother fails to cite any legal authority in support of her argument. It is undisputed that Birth Mother's counsel had notice of all hearings, and notice given to an attorney constitutes notice to his client. *See Washmuth v. Wiles*, 12 N.E.3d 938, 941 (Ind. Ct. App. 2014). Moreover, Birth Mother's counsel stated that he had made every effort to contact Birth Mother using

App. 2012) (noting that a trial court abuses its discretion in denying a continuance when the moving party has shown good cause for granting the motion).

## Consent

[12] Although Birth Mother identifies the denial of her motion to continue the adoption hearing as the sole issue on appeal, she also appears to challenge the trial court's findings that her consent to the adoption was both irrevocably implied and not required. Birth Mother again fails to cite the applicable standard of review, and although she does cite to two statutes, she has clearly conflated and misunderstood them. First, Birth Mother cites I.C. § 31-19-9-18(b) and, without quoting or paraphrasing the statute, claims that it "should not apply" because Father prevented Birth Mother from contacting Child— thus, it appears that she is challenging the trial court's finding that she abandoned Child. *Appellant's Brief* at 10. But I.C. § 31-19-9-18 has nothing to do with abandonment; instead, it addresses the circumstances under which a party who fails to appear or to prosecute a motion to contest an adoption will be deemed to have consented thereto.

[13] Birth Mother also cites I.C. § 31-19-10-1.2(a)(1) and, again without quoting or paraphrasing the statute, argues that it does not apply in this case because that

---

the contact information she provided, but was unsuccessful. It is therefore unlikely that the trial court would have had better luck had it attempted to send notice of the hearing directly to Birth Mother.

statute addresses "a biological parent who actually knows about a hearing and can attend, but chooses not to attend and in essence does not object to the adoption." *Appellant's Brief* at 10. But I.C. § 31-19-10-1.2(a)(1) has nothing to do with a biological parent's failure to appear to contest an adoption. Instead, it discusses the applicable burden of proof when a petition for adoption alleges that a parent's consent is unnecessary pursuant to I.C. § 31-19-9-8 and the parent files a motion to contest the adoption. Specifically, the burden is on the petitioner to establish that the parent's consent is not required for one of the reasons set forth in I.C. § 31-19-9-8—in this case, because the parent is adjudged to have abandoned the child for at least six months immediately preceding the filing of the adoption petition. Birth Mother makes no argument that this burden was allocated improperly.

[14] For all of these reasons, to the extent Birth Mother challenges the trial court's findings that her consent to the adoption was both irrevocably implied and not required, her argument is waived for lack of cogency. Nevertheless, in the interest of justice, we will attempt to address Birth Mother's arguments to the extent her deficient briefing allows. Our standard of review in adoption cases is well-settled. *In re Adoption of M.B.*, 944 N.E.2d 73, 76 (Ind. Ct. App. 2011). We will not disturb a trial court's ruling on an adoption petition unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.* We will not reweigh the evidence, and we will look to the evidence most favorable to the trial court's decision and the reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the

decision. *Id.* "The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption." *Id.* (quoting *M.A.S. v. Murray*, 815 N.E.2d 216, 219 (Ind. Ct. App. 2004)).

[15] The trial court found two alternative bases for dispensing with Birth Mother's consent, both of which were amply supported by the evidence. First, the trial court found that Birth Mother's consent was irrevocably implied pursuant to I.C. § 31-19-9-8 due to her failure to appear for the contested hearing. This statute provides that the consent of a person served with notice of an adoption petition is irrevocably implied if the person files a motion to contest the adoption, but then fails to appear at the hearing to contest the adoption and fails to prosecute the motion without unreasonable delay.

[16] Birth Mother argues (without citation to authority) that I.C. § 31-19-9-18 applies only to a person who has been personally notified of a hearing and chooses not to attend. Birth Mother argues that her failure to appear and to prosecute her motion to contest the adoption should be excused because, according to her, she did not receive actual notice of the hearing due to her participation in a drug treatment program in California. We are unpersuaded. Birth Mother's counsel made every effort to personally notify Birth Mother of the hearings and to have her attend, but Birth Mother's disappearance made it impossible for him to do so. Birth Mother could not short-circuit the adoption proceedings simply by vanishing. Moreover, the trial court was in no way obligated to accept Birth Mother's claim that she was in drug treatment as true, particularly in light of her disappearance and counsel's inability to reach her or

anyone else at the facility where she claimed to be enrolled. Indeed, the trial court made a specific finding that Birth Mother had not completed drug treatment. In any event, even if Birth Mother was in treatment, that would not excuse her complete failure to maintain contact with the court or, at the very least, her own attorney and to remain apprised of the status of the adoption proceedings, of which she was undisputedly aware. Accordingly, the trial court's finding that Birth Mother's consent to the adoption was irrevocably implied due to her failure to appear and prosecute her motion to contest the adoption is clearly supported by the evidence.

[17]   The trial court also found that Birth Mother's consent was not required because she had abandoned Child for at least six months immediately preceding the date the adoption petition was filed as set forth in I.C. § 31-19-9-8(a)(1). Birth Mother argues that the trial court's finding in this regard is erroneous because Father thwarted her efforts to maintain contact with Child, but she does not provide adequate citation to the record in support this claim. Instead of citing to specific sections of the transcript or appendix, Birth Mother provides the following citation: "(Appellant's Appendix, pg. )." *Appellant's Brief* at 10.

[18]   It is undisputed that Birth Mother has not visited Child since March 2015. According to Father, Birth Mother simply stopped showing up for visits and when he would call or text her to see if she was coming, he would get no response. After that, Birth Mother never asked for visitation again, and the dissolution court suspended her visitation in September 2015. Father testified that Birth Mother texted him in November 2015 asking to talk to Child on the

phone, but he did not allow it because he believed the court order prohibited Birth Mother from having contact with Child. This was the only time Mother ever attempted to speak to Child on the phone after she stopped visiting.

[19] Additionally, Adoptive Mother testified that Birth Mother had sent Child a single card in December 2015, but there is no support in the record for Birth Mother's assertion that Father and Adoptive Mother prevented Child from receiving it. In any event, Birth Mother's meager and belated efforts to contact Child do not undermine the trial court's finding that Birth Mother abandoned Child for the purposes of the adoption statutes. See I.C. § 31-19-9-8 (providing that "[i]f a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent"). For all of these reasons, the trial court's finding that that Birth Mother abandoned Child is clearly supported by the evidence.

### Request for Appellate Attorney Fees

[20] On cross-appeal, Adoptive Mother requests an award of appellate attorney fees pursuant to Ind. Appellate Rule 66(E), which provides this court with discretion to assess damages, including attorney fees, when an appeal is frivolous or in bad faith.

> We will award appellate attorney fees only if an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. We use extreme restraint in deciding whether to award appellate attorney fees because of the potential chilling effect upon the exercise of the right to appeal. Bad faith in an appeal may be either substantive or procedural.

> Substantive bad faith occurs if an appellant's contentions and arguments are utterly devoid of all plausibility. Procedural bad faith occurs if a party flagrantly disregards the requirements of the rules of appellate procedure, omits or misstates relevant facts, or files a brief calculated to require the maximum expenditure of time by both the opposing party and this court.

*Blackman v. Gholson*, 46 N.E.3d 975, 981 (Ind. Ct. App. 2015) (internal citations and quotation marks omitted). "Even if the appellant's conduct falls short of that which is 'deliberate or by design,' procedural bad faith can still be found." *Memory Gardens Mgmt. Corp. v. Liberty Equity Partners, LLC*, 43 N.E.3d 609, 619 (Ind. Ct. App. 2015) (quoting *Thacker v. Wentzel*, 797 N.E.2d 342, 347 (Ind. Ct. App. 2003)), *trans. denied*. Nevertheless, we require a strong showing to justify an award of appellate damages under App. R. 66(E), and such sanctions are "not imposed to punish mere lack of merit but something more egregious." *Id.*

[21]   Adoptive Mother's arguments generally focus on allegations of procedural bad faith. Specifically, Adoptive Mother argues that Birth Mother's brief contains a number of "factual misrepresentations, blatant false statements[,] and irrelevant arguments." *Appellee's Brief* at 15. Adoptive Mother also notes that Birth Mother's appellate brief contains numerous defects, which have caused Adoptive Mother's counsel to expend "an extraordinary amount of time and effort trying to distinguish what potions of [Birth Mother's] brief are relevant, what portions are complete misrepresentations of the record[,] and what exactly is being appealed at what standard of review." *Id.* at 17.

[22] There are numerous violations of the appellate rules in Birth Mother's Appellant's Brief. First, the Table of Authorities contains a single case citation: "*988 N.E.2d 1250 (Ind. Ct. App.) 996 N.E.2d 1278 (Ind. 2013).)*"[3] *Appellant's Brief* at ii. *See* Ind. Appellate Rule 22(a) (providing that "[a]ll Indiana cases shall be cited by giving the title of the case followed by the volume and page of the regional and official reporter (where both exist), the court of disposition, and the year of the opinion"). Birth Mother has also failed to include references to the pages on which the case is cited. *See* App. R. 46(A)(2) (providing that "[t]he table of authorities shall list each case, statute, rule, and other authority cited in the brief, with references to each page on which it is cited"). This is perhaps because Birth Mother fails to cite this case, or any case for that matter, anywhere in her Appellant's Brief. Birth Mother has also listed two statutes in her table of authorities, and although she does actually cite them in her brief, she has again failed to provide page numbers.

[23] Birth Mother's Statement of Case is essentially a description of every page appearing in the Appellant's Appendix, many of which are irrelevant to the issues presented. *See* App. R. 46(A)(5) (providing that the Statement of Case "shall briefly describe the nature of the case, the course of the proceedings *relevant to the issues presented for review*, and the disposition of these issues" (emphasis supplied)). Additionally, Birth Mother's Summary of Argument is a

---

[3] It appears that Birth Mother was attempting to cite *In re Adoption of J.T.A.*, 988 N.E.2d 1250 (Ind. Ct. App. 2013, *trans. denied*, as well as our Supreme Court's order denying transfer in that case.

one-sentence restatement of the issue presented for review. *See* App. R. 46(A)(7) (providing that the Summary of Argument "should contain a succinct, clear, and accurate statement of the arguments made in the body of the brief" and "should not be a mere repetition of the argument headings").

[24] The most egregious of Birth Mother's violations of the appellate rules, however, appear in the Statement of Facts and Argument sections of her Appellant's Brief. App. R. 46(A)(6) provides that the Statement of Facts shall describe the facts relevant to the issues presented, supported by citation to the record or appendix, and that the facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed. Furthermore, as this court has noted, the statement of facts should be devoid of argument. *Minix v. Canarecci*, 956 N.E.2d 62, 66 n.2 (Ind. Ct. App. 2011), *trans. denied*. Birth Mother's Statement of Facts contains numerous assertions that are unsupported by citation to the record. Birth Mother also cites facts unfavorable to the trial court's judgment and therefore not in accordance with the applicable standard of review. Specifically, Birth Mother insists that she was unable to attend the hearings because she was in inpatient drug treatment in California, but as we explained above, the evidence presented to support this assertion was suspect at best, and the trial court apparently did not find it credible. Moreover, Birth Mother's Statement of Facts contains a number of argumentative statements. For example, Birth Mother argues that a statement made by Adoptive Mother's counsel at the adoption hearing was "simply not true[,]"and that the trial court "could have easily waited until the rehab was over and while

there is a possibility the outcome would have been the [same] but at least [Birth Mother] could have testified on her own behalf." *Appellant's Brief* at 5-6. Commentary such as this has no place in a Statement of Facts.

The Argument section of Mother's brief is the most problematic. App. R. 46(A)(8) provides that the Argument shall contain "the contentions of the appellant on the issues presented, supported by cogent reasoning" and that "[e]ach contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]" Furthermore, the Argument section "must include for each issue a concise statement of the applicable standard of review" and "[e]ach argument shall have an argument heading." *Id.*

The Argument section of Birth Mother's brief spans a total of three and a half pages, in which she has failed to provide separate headings for her arguments or to cite the applicable standards of review. Indeed, Birth Mother has failed to cite any authority whatsoever in support of her argument that the trial court erred in denying her motion for a continuance. This failing made it impossible for this court or opposing counsel to discern the basis of Birth Mother's argument in this regard with any degree of certainty. Indeed, Adoptive Mother's counsel was forced to guess at the basis of Mother's argument and spent additional time and effort addressing two possible interpretations thereof. Additionally, although Birth Mother cites two statutes in support of her argument that the trial court erred in concluding that her consent to the adoption was both irrevocably implied and not required, she clearly conflated

and misunderstood them. These are the only citations to legal authority appearing anywhere in Birth Mother's Appellant's Brief, and Birth Mother has provided no cogent analysis whatsoever.

[27] Moreover, many of the assertions in the Argument section are not supported by citation to the record, and some are premised on misrepresentations and mischaracterizations of the record. For example, the Argument section contains the following passage:

> On December 7, 2015, after counsel for [Birth Mother] informed both the Court and opposing counsel that [Birth Mother] was entering drug rehabilitation beginning December 1, 2015, a court date was set in blatant disregard of this fact. . . . The adoption was filed and apparently the plan was to schedule the adoption hearing at a time when [Birth Mother] was in California and in rehab. This schedule made it impossible for [Birth Mother] to attend the hearing. On December 17, 2015, counsel for [Birth Mother] filed a continuance and attaching [sic] a letter from Nationwide Recovery verifying [Birth Mother's] attendance at a drug rehabilitation facility. Apparently, the Trial Judge either did not read this document or did not care because the adoption hearing took place anyway instead of simply waiting a few more weeks for [Birth Mother] to return to Indiana.

*Appellant's Brief* at 9-10 (record citations omitted).

[28] The record establishes that on December 7, 2015, the trial court entered an order scheduling this matter for hearing on January 8, 2016. Contrary to Birth Mother's assertion on appeal, it was not until December 17, 2015, ten days *after* the January 8, 2016 hearing was scheduled, that Birth Mother filed her motion

for continuance informing the trial court that she was in drug treatment. Also contrary to Birth Mother's suggestion that "the plan" was to hold the adoption hearing in her absence, the record reflects that upon receipt of the motion for continuance, the trial court converted the January 8, 2015 hearing into a status hearing and gave Birth Mother the opportunity to provide proof that she was in treatment. At the January 8, 2015 hearing, Birth Mother's counsel requested that adoption hearing be set "sooner than later" and expressly agreed to the January 13, 2016 hearing date. *Transcript* at 12. Furthermore, Birth Mother's disparaging claim that the trial court "either did not read [the Nationwide Recovery Letter] or did not care" is specious. *Appellant's Appendix* at 9. The trial court was well aware of the letter, as its contents and dubious authenticity were discussed at length at the hearing. It was within the trial court's discretion to find the Nationwide Recovery Letter unworthy of credit.

[29] Birth Mother also claims that she "tried to call [Child] and send cards, but [Father] would not allow this contact." *Id.* at 10. This is a gross overstatement of the evidence in the record, which establishes that after having no contact with Child since March 2015, Mother attempted to call Child one time in November 2015 and sent him one card in December 2015. Although Father denied Mother's request to speak to Child on the phone, he did so because there was a court order in place that he believed prohibited such contact. There is no support in the record for Mother's claim that Father and Adoptive Mother intercepted the card.

It is incumbent on appellate counsel to accurately represent the record and to provide cogent argument supported with adequate citation to authority. "A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues." *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997). Birth Mother's counsel has tendered a brief that falls well below these minimum standards of competent appellate advocacy. As a result, opposing counsel has been forced to devote inordinate time and effort in an attempt to understand and respond to Birth Mother's arguments, as has this court. We therefore exercise our discretion to award Adoptive Mother appellate attorney fees and remand for a determination of reasonable appellate attorney fees. *Cf. id.* (awarding appellate attorney fees where appellant's counsel misrepresented the record and tendered a deficient brief).

Judgment affirmed and remanded with instructions.

Bradford, J. and Pyle, J., concur.